MAYS *v.* C. M. JOHNSTON & SONS SAND & GRAVEL COMPANY, INC.

4-6638 158 S. W. 2d 910

Opinion delivered February 16, 1942.

780

*John C. Sheffield,* for appellant.

*A. M. Coates,* for appellee.

GRIFFIN SMITH, C. J. John Mays and others sought to eject C. M. Johnston & Sons [1] from thirty-five acres in Phillips county, described as being in the south half of the north half of the southwest quarter of fractional section twenty-seven, township one south, range five east, commencing at a point on the north line of section twenty-seven, nine chains and fifty-four links [2] north of the south west corner of the section: running thence north nine chains, thence east thirty-seven chains, thence south to the north line of land belonging to Louis Thompson, thence west to the point of beginning.

Averment was that Clarence Quarles and his wife, as owners, conveyed to John Adams by deed dated January 13, 1876. The heirs of John Adams, during 1911, conveyed to Allen Mays. Copies of the deeds were attached to the complaint. The nine appellants are heirs of Allen Mays. They allege possession in themselves and in their predecessors until 1935, when the sand and gravel company entered. The company, it is recited, wrongfully occupies the land. Payment of taxes through 1937 was claimed by Mays.

---

[1] Through error the original complaint named C. M. Johnston & Sons as defendants. By amendment C. M. Johnston & Sons Sand & Gravel Company, Incorporated, was substituted, with new service. Stenographic errors contained in the original complaint were carried into the amended complaint.

[2] The complaint contains the words "nine chains and fifty-four lengths." "Lengths" was obviously intended to be "links."

The answer alleges that subsequent to 1848, Luther Chase, U. S. marshal for the district of Arkansas, by virtue of a levy made upon all lands in section twenty-seven, conveyed them to William Russell. Russell conveyed all of the south fractional half of the section to Andrew J. Thompson. In 1850, Thompson and wife conveyed the south fractional half to Mary J. Tarpley. Subsequent to Thompson's deed there were various *mesne* conveyances. It is alleged that the land held by the company consists of thirty-five acres in the south fractional half of section twenty-seven; that the land was duly assessed for 1929 general taxes; that the taxes were not paid, and there was forfeiture to the state. March 6, 1936, the company purchased from the land commissioner, and immediately went into possession. The acreage, it is contended, had been abandoned. Brush and small trees had grown prolifically, and the property was without improvements. Possession for two years was pleaded.

The state commissioner's deed to the company described the lands as *part* of fractional south half of section twenty-seven, township one south, range five east, containing 35 acres. Metes and bounds were not given.

Exceptions to appellants' deraignment of title were filed. It was insisted that the deed of Luther Chase described the land conveyed to William Russell as the south fractional part of fractional section twenty-seven (township, range, etc.), containing 115.86 acres. By deed of 1852, Edmond W. Jones "attempted" to convey to Clark S. Bronson, using the words, "south fractional half of section twenty-seven. . . ." Deraignment of title by Mays failed to show a conveyance to Jones. On the contrary, Russell conveyed to Andrew J. Thompson by deed of January 22, 1849; and in 1850, Thompson conveyed to Mary J. Tarpley. Jones, it is contended, attempted to convey to John M. Quarles in 1852, but ". . . plaintiffs fail to trace or show any title whatsoever in Jones subject to conveyance under the said deed to . . . Quarles."

The deed of Clark S. Bronson and others to Quarles covering south fractional half of section twenty-seven was

challenged on the ground that Clark was without title. A sheriff's deed to T. M. Jacks and John P. Moore was alleged to be void on its face, in that the description was "fractional part of section twenty-seven, . . . containing 115 acres." Deed of Jacks and wife (1874) to Clarence Quarles, describing the south half of fractional section twenty-seven, was attacked because Jacks' interest was based on the sheriff's tax deed. Clarence Quarles' deed of 1876 to John Adams, describing 35 acres in section twenty-seven, was thought by appellee to be void for indefiniteness. The three deeds of 1911 to Allen Mays were questioned because ". . . the descriptions were so vague, indefinite, and uncertain, that the lands purported to be conveyed could not be located thereby." These descriptions are shown in the footnote.[3]

Finally, it was alleged that the description contained in the amended complaint, wherein there was an attempt to identify by metes and bounds, was likewise indefinite.

The trial court's judgment was that plaintiffs' exhibits "B" to "K," inclusive, in which it was sought to deraign title "were wholly insufficient to constitute muniments of title," and that the exceptions should be sustained. This was followed by a finding that the description of lands claimed by plaintiffs was ". . . so vague, indefinite, and uncertain, that the alleged lands could not be located thereby."

The circuit clerk for Phillips county identified deed of 1876 from Clarence Quarles to Lewis Thompson, conveying the land [described in the margin].[4]

---

[3] The deed from Lizzie Lewis to Allan Mays recited "The fractional south half of section twenty-seven." Angie Mays' deed described "The fractional south half of section twenty-seven," while the deed of LaFayette McNeal to Mays recited: "Part fractional south half of section twenty-seven." In each deed the section and range were given. One deed concluded with the words: ". . . containing 35 acres more or less conveyed by Clarence Quarles to John Adams." Another is: ". . . containing 35 acres conveyed by Clarence Quarles to John Adams." The third deed recites: ". . . conveyed by Clarence Quarles to John Adams."

[4] "Thirty-five acres in the south half of the north half of fractional southwest quarter of section 27, township one south, range five east, bounded as follows: Commencing at the southwest corner of

The clerk also identified deed from Clarence Quarles to John Adams (1876), conveying thirty-five acres in the south half of the north half of the southwest quarter of fractional section twenty-seven. The description is shown below.[5] This testimony was followed by identification of the records showing the three deeds to Allen Mays [heretofore mentioned].

John M. Quarles, a professional civil engineer, and son of Clarence Quarles, had known John Adams. The land in controversy, he testified, is in what is known as "Quarles' Island." Adams had possession of the property until high waters wrecked the house. After Adams' death, his heirs were recognized as owners. Clarence Quarles sold some land in the same section to Lewis Thompson. The witness further testified he had located the land from the metes and bounds description. He knew the Adams heirs had occupied the property "until this dispute."

C. H. Purvis, civil engineer, and county surveyor for six years, had made a survey from the metes and bounds description. He began at the corner of sections twenty-nine and thirty-two. Starting from that established corner, Purvis went east a mile to the southeast quarter of section 28. The Lewis Thompson land is immediately south of the old Adams' tract. When asked how the thirty-five acre tract described by metes and bounds could be in the south half of the north half of "this particular quarter section," the witness replied: ". . . this is not a regular section; it is fractional: a little over twenty chains north and south. The only reason I can see for making a description like that is that [the grantor]

section twenty-seven and running due north along section line nine chains and fifty-four links, thence east thirty-six chains to stake, thence south to south boundary line of fractional section twenty-seven, thence west along said section line to point of beginning."

[5] "Commencing at a point on west line of section twenty-seven, nine chains and fifty-four links north of southwest corner of said section line and running north nine chains, thence east thirty-seven chains, thence south to north line of land belonging to Lewis Thompson, thence west to point of beginning. [The deed from Quarles to Thompson, and from Quarles to Adams, was executed the same day]."

784

 

was dividing the total lands there and calling one the
south half and the other the north half; but to correct
that, as we find it in our business—to make it correct
and to prevent any error, if he had any in there—he gives
the metes and bounds description. . . . A regular
quarter section of land (160 acres) is forty chains north
and south. . . . The west side of this particular
quarter section is twenty chains and forty-nine links.''
North of fractional section twenty-seven is Private Sur-
vey No. 499—a Spanish grant.

The reprint shown above is from the original U. S.
government plat of the survey of township one south,
range five east, as certified August 12, 1816, by Henry
Elliott, deputy surveyor. The plat is on file in the state
land office, and is the character of record in respect of
which we take judicial notice.

It will be seen that the point referred to by the witness, Purvis, as a place of beginning is the southwest corner of section twenty-eight, the northwest corner of section thirty-three, the northeast corner of section thirty-two, and the southeast corner of section twenty-nine. Purvis proceeded a mile east from this point to the northwest corner of section thirty-four, which is also the southeast corner of section twenty-eight, the northeast corner of section thirty-three, and the northwest corner of section thirty-four. Having thereby determined the southwest corner of fractional section twenty-seven, the description ". . . thirty-five acres in the south half of the north half of the southwest quarter of fractional section twenty-seven" becomes of secondary importance, for the deeds say the point of beginning is nine chains and fifty-four links north of this corner. Beginning, then, the distance north indicated, the west boundary necessarily follows the north-south line of fractional section twenty-seven nine chains. From this point (being the northwest corner of the 35-acre Adams' tract) the course is due east thirty-seven chains, thence south ". . . to north line of land belonging to Lewis Thompson, thence west to point of beginning."

While the distance south is not given, it must be nine chains, because the next direction is "west to point of beginning." In order to go west to the point of beginning, it would be necessary to proceed nine chains south from the terminus of the thirty-seven chains east. In no other way could a line west reach the point of beginning.[6]

We conclude, therefore, that the description was sufficient, and since possession from 1911 until 1935—twenty-four years—under the three deeds to Allen Mays is controverted only by a challenge to accuracy of the survey, it must be held that appellants are entitled to prevail on the strength of their title.

The original complaint, and the amended complaint, describe the land as ". . . commencing at a point on

---

[6] Although the area comprising thirty-five acres beginning at a point nine chains and fifty-four links north of the southwest corner of section twenty-seven is shaded in the plat to the river, thirty-seven chains east from the starting point do not extend entirely to the river.

the *north* line of section twenty-seven." It is clear that *west* was intended, and that "north" was an inadvertence. This is made doubly certain by action of the trial court in granting appellees a writ of assistance. From the same evidence upon which it was held that appellants could not prevail because of the indefinite description, there was this judgment:

"It appears to the satisfaction of the court that the legal description of the land involved herein is 'thirty-five acres in the fractional southwest quarter of section twenty-seven, township one south, range five east, Phillips county, Arkansas, to-wit: Beginning at a point on the west line of said fractional twenty-seven nine chains and fifty-four links north of the southwest corner of said section twenty-seven, and thence north along the west line of said fractional twenty-seven nine chains to a stake; thence east thirty-seven chains to a stake; thence south nine chains to a stake; thence west thirty-seven chains to a point of beginning'."

In thus identifying the land the court accepted evidence offered by appellants. This was not error. It was, however, inconsistent with the finding that the descriptions were indefinite.

Finally, it is contended the judgment should be affirmed because motion for a new trial was not filed in time, no error appearing on the face of the record. Reliance is upon *Chicago, Rock Island & Pacific Railroad Company* v. *McCoy, Administrator, ante,* p. 596, 157 S. W. 2d 761.

Judgment was rendered May 1. The motion was filed May 7. Order overruling was made June 27, more than thirty days after judgment. The order, however, recites that the motion was filed ". . . within the time and in the manner provided by law." It is insisted that failure to *present* the motion within 30 days brings the case within the rule sustained in the McCoy case. There is no affirmative showing that the motion was not presented when filed. It is not imperative that the court *act* within thirty days, as the record shows that the motion was filed within the time, and in the manner provided by law, and was overruled during term time.

The judgment is reversed, and the cause is remanded with directions to render judgment for appellants for possession.